## SUMMAR *v.* BESSER MANUFACTURING CO.

1. CONFLICT OF LAWS—TORTS—CONTROLLING LAW.

   While the administrator of the estate of a deceased person may sue in this State for a wrong perpetrated against decedent in another jurisdiction, the law of the place where the wrong was committed governs the right of recovery for a tort.

2. SAME—TORT—LIABILITY DETERMINED BY LAW OF PLACE OF INJURY.

   The liability for an alleged tort is determined by the law of the place of injury regardless of the law of the forum in which an action therefor is instituted.

---

Liability for tort is determined by the law of place of injury, see Restatement, Conflict of Laws, §§ 378, 379.

An action under the death act of another jurisdiction must be brought within the time limited by the law of such jurisdiction, see Restatement, Conflict of Laws, § 397.

3. DEATH—COMMON LAW—TORTS—NEGLIGENCE—ACTION.

At common law there was no right to a civil action for a death caused by a wrongful or negligent act of another.

4. SAME—COMMON LAW—STATUTES—LIMITATION OF ACTIONS.

Since there is no right to a civil action for the death of a human being at common law where the right to such an action is created by statute and is sought to be enforced it is subject to the statutory limitation within which the action must be brought (District of Columbia Code [1940 Ed.], §§ 16–1201, 16–1202).

5. SAME—STATUTES—LIMITATION OF ACTIONS.

Provision limiting right to bring action to one year where wrongful act causing death occurred in District of Columbia and which provision is a part of statute giving a right of action for wrongful death barred right of action as to daughters of decedent who were citizens of the United States and who were residents of the District of Columbia and failed to bring action within the year (District of Columbia Code [1940 Ed.], §§ 16–1201, 16–1202).

6. SAME—TOLLING STATUTE OF LIMITATION.

Provision of District of Columbia statute creating civil action for wrongful death limiting period within which action may be brought to one year after death of party injured was not tolled as to daughter of deceased who was a national of Greece but a resident of Michigan at time of fatal accident to father in the District and until after action was brought in this State by administrator appointed herein pursuant to her petition and no obvious reason appears why action might not have been commenced within the year following her father's death as well as afterward (District of Columbia Code [1940 Ed.], §§ 16–1201, 16–1202).

7. SAME—DISTRICT OF COLUMBIA—ALIEN ENEMY HEIRS—TOLLING STATUTE OF LIMITATIONS.

In action for wrongful death of man from fatal injuries received in the District of Columbia, where his widow and two of his several children were nationals and residents of Greece, provision of District statute creating the right of action but limiting the right to bring it to one year after death was not tolled by reason of the fact that such heirs are assumed to be alien enemies, since they were in a country occupied by the military or naval forces with which this country is at war, as the action might have been prosecuted to judgment on their behalf and the property released to the alien property cus-

todian (40 Stat. at L. 411; District of Columbia Code [1940 Ed.], §§ 16–1201, 16–1202).

8. WAR—ALIENS—COURTS—AID TO THE ENEMY.

The ancient rule against suits by resident alien enemies has survived only so far as necessary to prevent use of the courts to accomplish a purpose which might hamper our own war efforts or give aid to the enemy.

9. SAME—AID TO THE ENEMY—ALIENS—COURTS.

Although justice to a nonresident alien enemy might require suspension of a case where he is defendant, when he is plaintiff a judgment in his favor would not be of aid and comfort to the enemy since the sum recovered would be paid over to the alien property custodian (40 Stat. at L. 411; District of Columbia Code [1940 Ed.], §§ 16–1201, 16–1202).

10. LIMITATION OF ACTIONS—DISTRICT OF COLUMBIA—SERVICE ON NONRESIDENTS.

In action for wrongful death caused by injuries received in the District of Columbia which were caused by Michigan motorist where District statute provided for substituted service on nonresident through its director of vehicles and traffic and by .registered mail with return receipt of nonresidents, the action might have been prosecuted within year limitation for doing so, and failure to commence action within time limited terminated the right in the District and likewise in Michigan [District of Columbia Code [1940 Ed.], § 40–403).

11. STATUTES—CONFLICT OF LAWS—DISTRICT OF COLUMBIA—MICHIGAN—LIMITATION OF ACTION.

Provision of District of Columbia statute terminating right to bring action for wrongful death caused therein at the end of a year from the death did not contravene Michigan statute providing for suspension of running of statute of limitations when a person should be disabled from prosecuting such action where no reason appears why plaintiff administrator might not have brought the action timely (District of Columbia Code [1940 Ed.], §§ 16–1201, 16–1202).

Appeal from Alpena; Smith (Fred P.), J. Submitted October 5, 1944. (Docket No. 66, Calendar No. 42,880.) Decided January 2, 1945.

Case by Anthony Summar, administrator of the estate of Christ Chipouras, deceased, against Besser

Manufacturing Company, a Michigan corporation, and John L. Sullivan for damages caused by negligent death of plaintiff's decedent. Declaration dismissed on motion. Plaintiff appeals. Affirmed.

*Black & Black,* for plaintiff.

*Carl R. Henry (L. J. Carey* and *Geo. J. Cooper,* of counsel), for defendant.

North, J. This is an appeal from the trial court's order dismissing the plaintiff's declaration. Plaintiff is the administrator of the estate of Christ Chipouras, deceased. Plaintiff filed the declaration February 11, 1944, basing his action on an automobile accident which occurred in Washington, D. C., October 19, 1941, and in which Chipouras was so seriously injured that he died within a few hours. The plaintiff alleges the defendant corporation of Alpena, Michigan, was the owner, and Sullivan, the driver, of the car which killed Chipouras. The heirs of the deceased are: Polixeni, the widow, Georgia, a daughter, and Gust, a son, all nationals and residents of Greece; Virginia Summar, a daughter who is a national of Greece but a resident of Michigan; Catherine Scandalos and Cleopatra Formant, daughters who are both nationals of the United States and residents of Washington, D. C.

While plaintiff's declaration asserts a right of recovery "by reason and virtue of the statutes and laws (common law) of the District of Columbia and the State of Michigan," we hold, for reasons hereinafter noted, that plaintiff's right to recover is governed solely by the appropriate statutory provisions of the District of Columbia; from which we quote the following:

"§ 16–1201 (21:1) 'Cause of Action' defined—Damages—Limitation. Whenever by an injury done or happening within the limits of the District of Columbia the death of a person shall be caused by the wrongful act, * * * the person who or corporation which would have been liable if death had not ensued shall be liable to an action for damages for such death, notwithstanding the death of the person injured; * * * and such damages shall be assessed with reference to the injury resulting from such act, neglect or default causing such death, to the widow and next of kin of such deceased person: Provided, That in no case shall the recovery under this title exceed the sum of ten thousand dollars * * *.

"§ 16–1202 (21:2) Party Plaintiff—Statute of Limitations. Every such action shall be brought by and in the name of the personal representative of such deceased person, and within one year after the death of the party injured." District of Columbia Code (1940 Ed.), title 16, chap. 12.

The trial court dismissed plaintiff's action on the ground in part that, as the cause was predicated on the quoted District of Columbia statute, which includes a one-year limitation within which to bring suit, and since plaintiff failed to institute suit within one year, the action was and is barred. But plaintiff takes the position that the District of Columbia limitation statute is not applicable in this case in the Michigan court; but instead the Michigan statute of limitations, by which the suit would not be barred, is applicable and controlling. This position taken by plaintiff is not tenable.

While the plaintiff had an undoubted right to sue in this State for a wrong perpetrated in another jurisdiction, it is equally true in a tort case that the law of the place where the wrong was committed governs right of recovery.

"The liability for an alleged tort is determined by the law of the place of injury regardless of the law of the forum in which an action therefor is instituted." *Kaiser* v. *North* (syllabus), 292 Mich. 49.

To the same effect see *Meyer* v. *Weimaster,* 278 Mich. 370; *Eskovitz* v. *Berger,* 276 Mich. 536; and *Edison* v. *Keene,* 262 Mich. 611. Further, this Court long ago recognized there was no common-law right to a civil action for a death caused by a wrongful act. In *Hyatt* v. *Adams,* 16 Mich. 180, 184, Mr. Justice CHRISTIANCY said:

"It is admitted on all hands, and cannot be denied, that, at common law, no civil action could be maintained for the death of a human being, caused by the wrongful act or negligence of another, or for any damages suffered by any person in consequence of such death."

Plaintiff herein had no common-law right of action. Instead, his right of action, if any, was solely under the quoted statute which created such right of action. Since this right of action is a creature of the statute, one who brings suit to enforce a right under the statute is restricted by the statutory limitation of time within which suit must be brought.

"The applicable rule is that, as the cause of action is created by statute, the statutory conditions, including the period of limitations, must be complied with. The limitation of time is a limitation on the right to recover." *Bigelow* v. *Otis,* 267 Mich. 409, 412.

To the same effect, see, also, *Bement* v. *Railway Co.,* 194 Mich. 64 (L. R. A. 1917 E, 322); *In re McLouth's Estate,* 290 Mich. 311; and *Maki* v. *George R. Cooke Co.* (C. C. A.), 124 Fed. (2d) 663 (146 A. L. R. 1352).

But plaintiff makes the further contention that notwithstanding the one-year limitation for bringing

the action as provided in the District of Columbia Code is held applicable to the instant case, the running of this statute was tolled by reason of the citizenship and residence of some or all of the heirs of the deceased, they being the real parties in interest. This contention on the part of plaintiff is made in consequence of the Federal act commonly referred to as trading-with-the-enemy act. Act of October 6, 1917, chapter 106, 40 Stat. at L. 411; 50 USCA, Appendix, § 1 *et seq.*, p. 189. It is sufficient to note that the trading-with-the-enemy act suspends the right of enemy aliens under certain circumstances to prosecute suits in either our Federal or State courts. The defendants take the position that the trading-with-the-enemy act is not applicable to suits in tort; and the trial court so held. It is unnecessary for purposes of decision in the instant case to go·into the details of whether such holding is or is not wholly accurate. Instead, without so adjudicating, we may decide this case on the assumption that, as plaintiff contends, the trading-with-the-enemy act is applicable to this tort case; and so assuming determine whether or not the residence or citizenship of the heirs of deceased or of any of them were such as to toll the running of the applicable limitation statute. As to the status of these heirs the record presents three different situations.

(1) As hereinbefore noted, two of the daughters of deceased were citizens of the United States and residents of Washington, D. C., at the time of the accident and continued as such at the time suit was brought. Clearly as to these two daughters no circumstance is revealed which would justify holding that the running of the statute of limitations was tolled.

(2) Another daughter, Virginia Summar, is a national of Greece but she was a resident of Michigan

at the time of the accident and continued as such until this suit was instituted. It was upon her petition that plaintiff was appointed administrator of the estate of Christ Chipouras, deceased; and such appointment was obviously procured by the daughter Virginia for the purpose of bringing this suit. There is no obvious reason why this daughter could not have instituted like proceedings within the year next following the death of her father as well as at a later time. And further under the authorities hereinafter noted, it must be held that the circumstance of Virginia being a national of Greece did not bar her from timely instituting suit and therefore did not toll the running of the applicable limitation statute.

(3) Again, as stated earlier herein, the widow of deceased, his daughter Georgia and his son Gust were, at the time of the accident and since that time, nationals and residents of Greece; and further that during the period between the accident and the bringing of this suit Greece was occupied by military forces of Germany with which the United States was and is at war. Because of this circumstance plaintiff contends they are alien enemies. For the purpose of decision herein we may assume that such contention is well founded under the terms of the trading-with-the-enemy act which provides:

"Definitions. The word 'enemy' as used herein, shall be deemed to mean, for the purposes of such trading and of this Act—

"(a) Any individual, partnership, or other body of individuals, of any nationality, resident within the territory (including that occupied by the military or naval forces) of any nation with which the United States is at war. * * * " Act of October 6, 1917, chapter 106, 40 Stat. at L. 411; 50 USCA, Appendix, § 1, p. 189.

But here again, in accord with modern authorities about to be cited, we conclude that under the circumstances noted concerning the residence and citizenship of the widow and of the two children with her, this suit might have been prosecuted in their behalf notwithstanding the provisions of the trading-with-the-enemy act, and therefore the running of the applicable one-year limitation statute was not tolled. As above noted, this conclusion likewise applies to the daughter Virginia.

While it is true that early cases both in the United States and in England held to the letter of the various laws preventing business intercourse with *de jure* enemy aliens and prosecution of suits in our courts by such enemy aliens, yet later cases are unanimous in relaxing such restrictions and applying reasonable tests to determine if the action would, in fact, ''aid the enemy.''

''But from the conclusion that the plaintiff occupies the status of an enemy alien, it does not necessarily follow that the complaint should be dismissed. If it would further the purpose of the act, and not violate its spirit, jurisdiction should be retained to the extent of permitting the action to go to judgment and the avails—in the event the plaintiff recovers—should be released to the alien property custodian.

''True, the expressions in the above cases exclude entertaining the suit of an enemy alien for any purpose. They hold the issue to be jurisdictional. But the more reasonable doctrine, I think, is to permit the action to proceed to judgment unless that course would grant advantage to the enemy. To put it differently, the test is not solely that of enemy status, but rather the effect of entertaining jurisdiction. This less rigorous and more reasonable doctrine finds enunciation in up-to-date cases.'' *Drewry* v. *Onassis,* 179 Misc. 578 (39 N. Y. Supp. [2d] 688).

"Access to our courts would not be denied to an enemy alien simply because of his status as such and that a cause of action possessed by him could be prosecuted to judgment upon condition that the avails thereof, if and when recovered, were controlled by impoundment with an appropriate governmental agency." *Lederer* v. *Kahn,* 179 Misc. 586 (39 N. Y. Supp. [2d] 696).

"Even if petitioner were a nonresident enemy alien, it might be more appropriate to release the amount of his claim to the alien property custodian rather than to the claimants; and this is precisely what was done in *Birge-Forbes Co.* v. *Heye,* 251 U. S. 317, 323 (40 Sup. Ct. 160, 64 L. Ed. 286, 289), in which this court said that the sole objection to giving judgment for an alien enemy 'goes only so far as it would give aid and comfort to the other side.' The ancient rule against suits by resident alien enemies has survived only so far as necessary to prevent use of the courts to accomplish a purpose which might hamper our own war efforts or give aid to the enemy. This may be taken as the sound principle of the common law today." *Ex parte Kumezo Kawato,* 317 U. S. 69 (63 Sup. Ct. 115, 87 L. Ed. 58).

"There is nothing 'mysteriously noxious' * * * in a judgment for an alien enemy. Objection to it in these days goes only so far as it would give aid and comfort to the other side. * * * Such aid and comfort were prevented by the provision that the sum recovered should be paid over to the alien property custodian, and the judgment in this respect was correct. When the alien enemy is defendant justice to him may require the suspension of the case." *Birge-Forbes Co.* v. *Heye,* 251 U. S. 317 (40 Sup. Ct. 160, 64 L. Ed. 286).

In two recent cases, courts have held that residents of the United States who are nationals of nations at war with the United States may maintain

suits in our courts. See *Matsuda* v. *Luond,* 52 Cal.
App. 453 (126 Pac. [2d] 359), and also *Ex parte Ku-
mezo Kawato, supra.* Under the above authorities
we cannot conceive that, had this action been started
seasonably, the case would have been dismissed on
the ground that the heirs of Christ Chipouras or any
of them were, as enemy aliens, barred from prose-
cuting this suit by the administrator. Under the cir-
cumstances this action should have been started
within the one-year period of limitation. Not hav-
ing been so started, we cannot now say that the *de
jure* status of the heirs or of any of them is sufficient
to excuse belated prosecution of this suit or to toll
the running of the limitation statute.

It is further urged by plaintiff that the one-year
limitation in the District of Columbia Code should
not be held to bar his cause of action because (1)
"the parties to this action did not reside in the Dis-
trict of Columbia during the year" next following
Chipouras' death, and (2) "the application of the
limitation of the Columbia statute as a bar in this
case would contravene the Michigan statute," 3
Comp. Laws 1929, § 13979 (Stat. Ann. § 27.608).
Neither of these contentions is tenable.

As to residence it may be noted that two of the
heirs were residents of the District of Columbia dur-
ing all of the period in question; but aside from that
circumstance, it is provided in substance by the Dis-
trict of Columbia Code (1940), Motor Vehicle Title
40, § 40-403, that by operating a motor vehicle on any
public highway of the District of Columbia both the
nonresident owner of the vehicle and his agent who
operates such vehicle subject themselves in a suit of
this character to the jurisdiction of the courts of the
District of Columbia, the statute providing for serv-
ice of process upon the Columbia "director of ve-
hicles and traffic" and by registered mail upon non-

resident defendants with "return receipt" filed in the cause. Thus this suit could have been prosecuted in the District of Columbia by plaintiff within the one-year limitation. Failing to do so terminated the right to bring suit in the District of Columbia and likewise in the courts of Michigan.

The District of Columbia statute does not "contravene" the above-cited Michigan statute because the latter statute provides for suspending running of the statute of limitations only "When any person shall be disabled to prosecute an action in the courts of this State;" and as hereinbefore noted, no reason appears why plaintiff might not have brought this action in Michigan within the year limitation provided in the statute by which the cause of action was created.

The judgment entered in the circuit court in favor of defendants is affirmed. Defendants may have costs of both courts.

STARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred with NORTH, J. WIEST, J., concurred in the result.