*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

RJMC CORPORATION,

        Plaintiff-Appellee,

V

DINO C. TOMEI, Individually and as Personal
Representative of the ESTATE OF DARIO TOMEI,
and DARIO MORTGAGES, INC.,

        Defendants-Appellants.

UNPUBLISHED
November 19, 2020

No. 348015
Livingston Circuit Court
LC No. 18-029723-CB

DINO C. TOMEI, Individually and as Personal
Representative of the ESTATE OF DARIO TOMEI,
and DARIO MORTGAGES, INC.,

        Plaintiffs-Appellants,

V

RJMC CORPORATION and ROBERT C. CORTIS,

        Defendants-Appellees.

No. 348015
Livingston Circuit Court
LC No. 18-029729-CB

Before: MARKEY, P.J., and METER and GADOLA, JJ.

PER CURIAM.

In this mortgage dispute action, appellants, Dario Mortgages, the Estate of Dario Tomei, and personal representative Dino Tomei, appeal by delayed leave granted[1] the trial court's

---

[1] *RJMC Corp v Tomei Estate*, unpublished order of the Court of Appeals, entered August 12, 2019 (Docket No. 348015).

-1-

September 13, 2018 order granting partial summary disposition under MCR 2.116(C)(10) in favor of appellees, RJMC Corporation and Robert C. Cortis, and awarding them $333,439.86 in surplus proceeds from a foreclosure sale.[2] We reverse.

## I. BACKGROUND

Many of the facts are undisputed. In November 2007, Dario Tomei, who is Dino Tomei's late father, entered into a mortgage agreement with RJMC in which Dario agreed to lend RJMC $500,000 secured by certain real property located in Livingston County. The mortgage provided that the principal amount was $500,000 "together with interest at the rate of twelve (12%) per cent [sic] per annum from the date hereof upon the unpaid principal until fully paid, payable according to the terms of a certain promissory note bearing even date herewith . . . ." The parties dispute whether the interest rate was simple or compounded. RJMC made payments from December 2007 to October 2009, at which point it ceased making payments. According to a handwritten ledger provided by the parties, the payments were made in monthly installments of $5,200. The total balance of the loan at the time RJMC ceased payments was $494,424.50. In 2014, Dario Tomei assigned this mortgage to Dario Mortgages. No actions appear to have been taken regarding RJMC's cessation of payments. In 2016, Dario Mortgages sent RJMC a letter informing it that a foreclosure sale would take place on January 11, 2017. Dario Mortgages subsequently purchased the property at foreclosure for $1,193,912.90, which it believed to be the total balance of the loan after applying compounded interest. RJMC, however, maintains that the interest rate was simple.

In October 2017, Dario Mortgages filed an action in Wayne Circuit Court alleging that RJMC engaged in misconduct while in possession of the property, obtained income while in possession of it, and interfered with Dario's use and enjoyment of it. The case was transferred to Livingston Circuit Court; however, because of confusion over payment of the transfer fee, the transfer was delayed until January 22, 2018. RJMC filed its own action on January 23, 2018, alleging that, because the interest rate of the mortgage had been simple rather than compound, it was entitled to $333,439.86 in surplus proceeds from the foreclosure sale. According to RJMC, the total loan balance at the time of the foreclosure sale had been $860,474.04, not the $1,193,912.90 that Dario Mortgages paid. RJMC contended that it was entitled to the difference between these two amounts. These two cases were subsequently consolidated by the trial court.

In August 2018, RJMC filed a motion for partial summary disposition under MCR 2.116(C)(10), which is at the heart of this appeal. RJMC argued that there was no genuine issue of material fact concerning whether the amount Dario Mortgages paid for the property at the foreclosure sale exceeded the amount that was actually due by $333,439.86. In support of its motion, it attached the mortgage, an affidavit from a certified public accountant (CPA), and the handwritten ledger. Dario Mortgages did not file a response, and it failed to appear at the hearing.[3]

---

[2] For ease of reference, we refer to appellants collectively as "Dario Mortgages" or "Dario." Similarly, we refer to appellees collectively as "RJMC."

[3] Subsequent proceedings and documentation demonstrated that Dario's counsel was ill and had been in communication with RJMC's counsel about an adjournment. At the hearing, however,

The trial court granted RJMC's motion "[b]ased on the . . . argument of plaintiff's counsel as to the amount of money that's owed his client and the reasons set forth there in the papers, . . . there being no response by way of any answer or affidavit or documentary evidence showing that there are genuine issues for trial." RJMC stipulated to the dismissal of its remaining claims in that action, and the trial court accordingly dismissed the claims. This addressed all claims in that case, and the trial court entered a final judgment for that case on September 13, 2018. The other action filed by Dario Mortgages against RJMC, however, remained pending.

Dario's counsel filed a motion for relief from judgment under MCR 2.612 or for amendment of the judgment under MCR 2.611, arguing that the September 2018 order could not constitute a final order because the two cases had been consolidated and Dario's claims against RJMC were still pending. Dario Mortgages failed to advance any arguments concerning the interest rate or the grant of partial summary disposition. The trial court denied the motion. This appeal follows.

## II. ANALYSIS

On appeal, Dario Mortgages raises for the first time its arguments concerning the interest rate. It argues that the documentation created an issue of fact regarding whether the interest rate was simple or compound and that, accordingly, the trial court erroneously granted partial summary disposition.

## A. STANDARD OF REVIEW

Given that Dario Mortgages failed to raise this issue in the trial court, it is unpreserved and, as RJMC argues, ordinarily not subject to review. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). In general, Michigan courts

> follow[] the "raise or waive" rule of appellate review. Under our jurisprudence, a litigant must preserve an issue for appellate review by raising it in the trial court. Although this Court has inherent power to review an issue not raised in the trial court to prevent a miscarriage of justice, generally a "failure to timely raise an issue waives review of that issue on appeal." [*Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (citations omitted).]

Because we find merit in Dario's arguments, we have decided to address this issue despite the failure to preserve it. "Unpreserved claims are reviewed for plain error, which 'occurs at the trial court level if (1) an error occurred (2) that was clear or obvious and (3) prejudiced the party, meaning it affected the outcome of the lower court proceedings.'" *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) (citation omitted). We review de novo the trial court's decision on a motion for summary disposition, as well as questions regarding the interpretation

---

RJMC's counsel failed to inform the trial court about the illness of Dario's counsel or desire for an adjournment.

and application of statutes and court rules. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010).

## B. SUMMARY DISPOSITION

Dario Mortgages argues that the documentation provided by RJMC was insufficient support for its motion under MCR 2.116(C)(10). Dario Mortgages contends that, in fact, the documentation provided by RJMC *created* an issue of material fact even without Dario's response. We agree.

A motion is properly granted pursuant to MCR 2.116(C)(10) when "there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." *Dextrom*, 287 Mich App at 415. This Court "must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Id*. at 415-416. "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008). When moving for summary disposition under MCR 2.116(C)(10), a party must support the motion with documentary evidence. MCR 2.116(G)(3)(b). The motion "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). Once this is completed, the nonmoving "party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." *Id*. If the nonmoving "party does not so respond, judgment, if appropriate, shall be entered against him or her." *Id*. However, the initial burden is on the moving party, not the nonmoving party, to show that summary disposition under MCR 2.116(C)(10) is warranted. See *Dextrom*, 287 Mich App at 415-416.

In its motion for partial summary disposition, RJMC contended that there was a surplus and that it was entitled to this surplus. In support, it submitted the mortgage, the handwritten ledger, and an affidavit from a CPA. The mortgage provided that the interest rate was 12% per year and would be paid based on the promissory note's terms; however, it did not explicitly identify the interest rate. The promissory note was not provided to the trial court. At first glance, it appears that, without examining the promissory note, the trial court could not be fully informed about the mortgage's terms or the interest rate. Dario Mortgages argues that the mortgage was ambiguous regarding the interest rate and that the trial court, by failing to consider the promissory note, improperly granted RJMC's motion. See *Port Huron Ed Ass'n, MEA/NEA v Port Huron Area Sch Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996) (stating that an ambiguous contract creates a question of fact).

The CPA's affidavit did not assist RJMC in establishing that the interest rate was simple. The CPA did not affirm that the interest rate was simple versus compound; he merely affirmed that, *if* simple interest was used, the final amount would be $860,473.04. In fact, the CPA affirmed that the difference between the unpaid principal balance at the time of the last payment, October 2009, and the unpaid principal balance at the time of the last entry, September 29, 2016, reflected "an accrual of interest at *an annual percentage rate of 20.04%*." This was based on the CPA's

review of the handwritten ledger. In other words, the affidavit created uncertainty because, if the interest rate was 20.05% from 2010 to 2016, this casts doubt on whether the 12% simple interest rate espoused by RJMC was accurate. The mortgage gave no indication that the interest rate was variable or would change over time. Rather than demonstrate that no genuine issue of fact existed, the affidavit created more uncertainty.

However, we do not agree with Dario Mortgages that the mortgage was ambiguous. We believe the mortgage language is similar to language in *Norman v Norman*, 201 Mich App 182, 184; 506 NW2d 254 (1993), which involved a consent judgment of divorce with a similarly unclear interest rate: "The consent judgment provided that the lien was to be 'with interest to accrue thereon at the rate of 8 ¾% per annum from the date of entry of this judgment.' " The trial court had used "its equitable jurisdiction" to rule "that, in order to adequately compensate plaintiff, it was necessary to calculate the interest as being compounded annually." *Id*. We held that this was erroneous. *Id*. The trial court had determined that the language was ambiguous, but we disagreed, stating that mere "[s]ilence does not equal ambiguity if the law provides a rule to be applied in the absence of a provision to the contrary." *Id*. We held that "the law disfavors compound interest and will allow for the payment of compound interest only in the presence of a statute or agreement providing for the payment of compound interest . . . ." *Id*.

There are, however, exceptions; "[t]his rule is subject to exceptions growing out of *peculiar relations between the parties* or the fraudulent conduct of the debtor, and *courts of equity sometimes allow the compounding of interest, in order to accomplish a just and equitable settlement*." *Id*. at 185 (quotation marks and citation omitted; emphasis added). The parties' course of conduct can lead to a court implying compound interest in the contract. *Id*. We summarized this general rule as follows: "Namely, in the absence of a statute to the contrary, an explicit agreement of the parties, *or some special circumstance dictating otherwise*, the rule in this state is that interest shall be calculated on the basis of simple interest rather than compound interest." *Id*. at 187 (emphasis added). Moreover, while acknowledging the exceptions, we cautioned that, "[i]f the imposition of 'equitable' compound interest is appropriate in this state, we think that it should be limited to the most compelling situations." *Id*. at 187-188. Examining the facts of *Norman*, we held that, given

> there is no statute that specifically provides for the payment of compound interest, and the parties' agreement, memorialized in the consent decree, does not explicitly provide for compound interest. This silence, rather than being ambiguous, means that the interest shall be calculated on the basis of simple interest rather than compound interest *in the absence of some special circumstance dictating otherwise*. [*Id*. at 187 (emphasis added).]

We believe that *Norman*'s holding and reasoning is analogous to the present case. Despite not stating what the interest rate was, the mortgage was not ambiguous because the general rule in Michigan is that simple interest governs in such situations. Dario Mortgages has provided no statute demonstrating that compound interest governs mortgages. The only possible support for Dario Mortgages, therefore, lies in the exceptions. It is certainly a longstanding principle in Michigan law that a mortgagor may recover any surplus proceeds from a foreclosure sale. See, e.g., *Kennedy v Brown*, 50 Mich 336, 337-339 (1883) (holding that the plaintiff was entitled to surplus from the foreclosure because the defendant paid more than the mortgage debt).

However, one of the listed *Norman* exceptions is the parties' course of dealing, and we believe this exception applies to the present case and created an issue of fact regarding the interest rate. The handwritten ledger provided that payments were $5,200 with a balloon payment on November 29, 2012; the loan, therefore, was 60 months. Dario Mortgages on appeal has demonstrated that, if a $500,000 loan were compounded at 12% annually with a balloon payment after 60 months, the result almost exactly matches the ledger's monthly payments and final balance at the end of 60 months. In other words, the ledger provided no way to find that the interest rate was simple; in fact, it preponderated for the opposite position. RJMC provided the ledger and has not otherwise disputed its validity as a representation of the parties' conduct. From the parties' course of conduct, we believe there was an implication of compound versus simple interest. *Norman*, 201 Mich App at 185, 187-188 & n 2.[4]

We also note that the ledger was used as a starting point for RJMC's and its CPA's calculations for the surplus. RJMC used as its starting point the $494,524.50 from the ledger, which was when RJMC halted payments. The CPA similarly used this starting point. However, this amount was based on the $5,200 monthly payments, which Dario Mortgages has demonstrated were likely based on compound interest. If simple interest was truly the correct interest rate, then the total balance would not have been $494,524.50; the number would have been much lower because the payments would have differed. Therefore, the $860,473.04 that RJMC and its CPA arrived at was not necessarily accurate. This is but another example of the uncertainty regarding the interest rate and RJMC's failure to adequately show no genuine issue of fact regarding it.

Therefore, we hold that the trial court plainly erred by determining that there was no genuine issue of material fact regarding the interest rate. The parties' course of conduct, the ledger, the CPA's affidavit, and the mortgage were insufficient to show that the interest rate was indisputably simple interest. It was therefore in error to grant RJMC's motion for partial summary disposition.[5]

---

[4] We recognize that the calculation provided to us by Dario Mortgages was not provided to the trial court. However, we again note that the initial burden is on the moving party, not the nonmoving party, to show that summary disposition under MCR 2.116(C)(10) is warranted. See *Dextrom*, 287 Mich App at 415-416. Even if the nonmoving "party does not so respond, judgment, *if appropriate*, shall be entered against him or her." MCR 2.116(G)(4) (emphasis added). Although Dario Mortgages did not respond to the motion, RJMC still had to show by documentary evidence that there was no genuine issue of material fact *and* that it was entitled to judgment as a matter of law. *Dextrom*, 287 Mich App at 415. The evidence RJMC provided, for those reasons we have already discussed, did not meet this burden.

[5] Given that we agree with Dario's arguments concerning this issue, we need not address its alternative arguments.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Patrick M. Meter
/s/ Michael F. Gadola