*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RJMC CORP.,

Plaintiff-Appellant,

v

DINO C. TOMEI, Individually and as Personal
Representative of the ESTATE OF DARIO TOMEI,
and DARIO MORTGAGES, INC.,

Defendants-Appellees.

UNPUBLISHED
January 19, 2023

No. 358073
Livingston Circuit Court
LC No. 18-029723-CB

Before: PATEL, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

In this mortgage action, there is no dispute that the mortgage interest rate was 12% per annum. But the parties dispute whether the interest rate was simple or compound. The trial court determined that there was no genuine issue of material fact that the interest rate was compound, granted Dario Mortgages' motion for summary disposition under MCR 2.116(C)(10), and denied RJMC's motion for summary disposition under MCR 2.116(C)(10).[1] We affirm.

## I. BACKGROUND

This is the second time that this mortgage interest dispute has come before this Court. We previously set forth the relevant facts and procedural history:

Many of the facts are undisputed. In November 2007, Dario Tomei, who is Dino Tomei's late father, entered into a mortgage agreement with RJMC in which Dario agreed to lend RJMC $500,000 secured by certain real property located in Livingston County. The mortgage provided that the principal amount was $500,000 "together with interest at the rate of twelve (12%) per cent [sic] per annum

---

[1] For ease of reference, we refer to defendants collectively as "Dario Mortgages" and plaintiffs as "RJMC."

-1-

from the date hereof upon the unpaid principal until fully paid, payable according to the terms of a certain promissory note bearing even date herewith . . . ." The parties dispute whether the interest rate was simple or compounded. RJMC made payments from December 2007 to October 2009, at which point it ceased making payments. According to a handwritten ledger provided by the parties, the payments were made in monthly installments of $5,200. The total balance of the loan at the time RJMC ceased payments was $494,424.50. In 2014, Dario Tomei assigned this mortgage to Dario Mortgages. No actions appear to have been taken regarding RJMC's cessation of payments. In 2016, Dario Mortgages sent RJMC a letter informing it that a foreclosure sale would take place on January 11, 2017. Dario Mortgages subsequently purchased the property at foreclosure for $1,193,912.90, which it believed to be the total balance of the loan after applying compounded interest. RJMC, however, maintains that the interest rate was simple.

In October 2017, Dario Mortgages filed an action in Wayne Circuit Court alleging that RJMC engaged in misconduct while in possession of the property, obtained income while in possession of it, and interfered with Dario's use and enjoyment of it. The case was transferred to Livingston Circuit Court; however, because of confusion over payment of the transfer fee, the transfer was delayed until January 22, 2018. RJMC filed its own action on January 23, 2018, alleging that, because the interest rate of the mortgage had been simple rather than compound, it was entitled to $333,439.86 in surplus proceeds from the foreclosure sale. According to RJMC, the total loan balance at the time of the foreclosure sale had been $860,474.04, not the $1,193,912.90 that Dario Mortgages paid. RJMC contended that it was entitled to the difference between these two amounts. These two cases were subsequently consolidated by the trial court.

In August 2018, RJMC filed a motion for partial summary disposition under MCR 2.116(C)(10), which is at the heart of this appeal. RJMC argued that there was no genuine issue of material fact concerning whether the amount Dario Mortgages paid for the property at the foreclosure sale exceeded the amount that was actually due by $333,439.86. In support of its motion, it attached the mortgage, an affidavit from a certified public accountant (CPA), and the handwritten ledger. Dario Mortgages did not file a response, and it failed to appear at the hearing. The trial court granted RJMC's motion "[b]ased on the . . . argument of plaintiff's counsel as to the amount of money that's owed his client and the reasons set forth there in the papers, . . . there being no response by way of any answer or affidavit or documentary evidence showing that there are genuine issues for trial." RJMC stipulated to the dismissal of its remaining claims in that action, and the trial court accordingly dismissed the claims. This addressed all claims in that case, and the trial court entered a final judgment for that case on September 13, 2018. The other action filed by Dario Mortgages against RJMC, however, remained pending.

Dario's counsel filed a motion for relief from judgment under MCR 2.612 or for amendment of the judgment under MCR 2.611, arguing that the September 2018 order could not constitute a final order because the two cases had been consolidated and Dario's claims against RJMC were still pending. Dario

-2-

Mortgages failed to advance any arguments concerning the interest rate or the grant of partial summary disposition. The trial court denied the motion. This appeal follows. [*RJMC Corp v Tomei*, unpublished per curiam opinion of the Court of Appeals, issued November 19, 2020 (Docket No. 348015), pp 2-3.]

On appeal, Dario Mortgages raised for the first time "that the documentation created an issue of fact regarding whether the interest rate was simple or compound and that, accordingly, the trial court erroneously granted partial summary disposition." *Id*. at 3. Although the issue was unpreserved, we addressed it because we found "merit in Dario's arguments." *Id*. We agreed with Dario Mortgages that "the documentation provided by RJMC *created* an issue of material fact even without Dario's response." *Id*. at 4. We reasoned that the mortgage merely established "the interest rate was 12% per year and would be paid based on the promissory note's terms" without specifying whether it was simple or compound. *Id.* We determined that the CPA's affidavit created uncertainty because it "reflected 'an accrual of interest at *an annual percentage rate of 20.04%*' " rather than 12%. *Id*. at 4-5. Although the law disfavors compound interest, we relied on *Norman v Norman*, 201 Mich App 182, 185; 506 NW2d 254 (1993), and found that "the parties' course of dealing" was an applicable exception that "created an issue of fact regarding the interest rate." *Id*. at 5-6.

> We found the following facts regarding the parties' course of conduct persuasive:
>
> The handwritten ledger provided that payments were $5,200 with a balloon payment on November 29, 2012; the loan, therefore, was 60 months. Dario Mortgages on appeal has demonstrated that, if a $500,000 loan were compounded at 12% annually with a balloon payment after 60 months, the result almost exactly matches the ledger's monthly payments and final balance at the end of 60 months. In other words, the ledger provided no way to find that the interest rate was simple; in fact, it preponderated for the opposite position. RJMC provided the ledger and has not otherwise disputed its validity as a representation of the parties' conduct. From the parties' course of conduct, we believe there was an implication of compound versus simple interest. [*RJMC Corp*, unpub op at 6 (citations omitted).]

We also determined that the ledger was insufficient to show that the interest was indisputably simple interest:

> We also note that the ledger was used as a starting point for RJMC's and its CPA's calculations for the surplus. RJMC used as its starting point the $494,524.50 from the ledger, which was when RJMC halted payments. The CPA similarly used this starting point. However, this amount was based on the $5,200 monthly payments, which Dario Mortgages has demonstrated were likely based on compound interest. If simple interest was truly the correct interest rate, then the total balance would not have been $494,524.50; the number would have been much lower because the payments would have differed. Therefore, the $860,473.04 that RJMC and its CPA arrived at was not necessarily accurate. This is but another example of the uncertainty regarding the interest rate and RJMC's failure to adequately show no genuine issue of fact regarding it. [*Id*.]

We concluded that the trial court plainly erred by granting RJMC's motion for partial summary disposition because "[t]he parties' course of conduct, the ledger, the CPA's affidavit, and the mortgage were insufficient to show that the interest rate was indisputably simple interest." *Id*.

On remand, both parties filed motions for summary disposition under MCR 2.116(C)(10). RJMC argued that there was no evidence to show that one of the *Norman* exceptions applied and that, accordingly, there was no genuine dispute that the interest rate was simple. Conversely, Dario Mortgages contended that the ledger, an affidavit submitted by Dino Tomei, and simple mathematical computations established that the interest rate was compound.

The trial court found that there was no genuine issue of material fact that that parties agreed to compounding interest. The trial court based its decision on two grounds: (1) the law-of-the-case doctrine, and (2) the evidence presented by the parties on remand. The trial court determined that "the law of this case leaves no other logical conclusion than to grant summary disposition in [Dario Mortgages'] favor." Alternatively, the trial court determined that the ledger was "dispositive that the parties' course of dealing provided for compounding interest." The trial court reasoned that the mortgage's outstanding balance of $494,525.50 could only have been calculated as such if the parties agreed to compound interest. Based on the parties' express agreements, the trial court found that there was no genuine issue of material fact that that parties implicitly agreed to compound interest. RJMC moved for reconsideration, which the trial court denied. This appeal followed.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Woodring v Phoenix Ins Co,* 325 Mich App 108, 113; 923 NW2d 607 (2018). We consider all evidence submitted by the parties in the light most favorable to the non-moving party. *El-Khalil*, 504 Mich at 160. Summary disposition under MCR 2.116(C)(10) is only appropriate when there is no genuine issue of material fact. *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008). "Whether law of the case applies is a question of law subject to review de novo." *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).

## III. ANALYSIS

RJMC argues that the law-of-the-case doctrine does not apply, that Dario Mortgages judicially admitted that the interest rate was simple versus compound, that Dario Mortgages' evidence was deficient, and that Dario Mortgages was required to show evidence of more than one prior transaction between the parties in which they used compounding interest. Although we agree that the law-of-the-case doctrine is inapplicable, we disagree with the remainder of RJMC's arguments.

A. LAW-OF-THE-CASE DOCTRINE

As this Court has explained:

The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue. Thus, a question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the same case. The primary purpose of the doctrine is to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. [*Ashker*, 245 Mich App at 13 (citations omitted).]

However, "[w]here an order of summary judgment is reversed and the case is returned for trial because an issue of material fact exists, the law of the case doctrine does not apply to the second appeal because the first appeal was not decided on the merits." *Brownlow v McCall Enterprises, Inc*, 315 Mich App 103, 112; 888 NW2d 295 (2016) (quotation marks omitted; alteration in original). If this Court "make[s] a ruling on a question of law before reversing the trial court's grant of summary disposition," then the law-of-the-case doctrine would apply to that question of law. *Id.* at 111.

We agree with RJMC that the law-of-the-case doctrine is inapplicable. We did not decide the first appeal on the merits, and we did not rule on a question of law. We emphasized the "uncertainty" regarding whether the interest rate was simple or compound, holding that "[t]he parties' course of conduct, the ledger, the CPA's affidavit, and the mortgage were *insufficient* to show that the interest rate was *indisputably* simple interest." *RJMC Corp*, unpub op at 6 (emphasis added). We did not rule as a matter of law that the interest rate was compound versus simple; we ruled that factual questions existed that precluded summary disposition. Accordingly, the law-of-the-case doctrine did not bind the trial court.

B. JUDICIAL ADMISSIONS

Under MCR 2.312(D)(1), "[a] matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of an admission." As described by this Court, "[j]udicial admissions are formal concessions in the pleadings in the case or stipulations by a party or its counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Hilgendorf v St John Hosp & Med Ctr Corp*, 245 Mich App 670, 689; 630 NW2d 356 (2001) (quotation marks and citation omitted). Although "a judicial admission is beyond challenge," such "admissions must be read narrowly." *Id.* at 690.

RJMC argues that Dario Mortgages judicially admitted in its answer to the complaint that the interest rate was simple versus compound. RJMC's complaint provided: "Pursuant to the terms of the Mortgage, the outstanding unpaid principal balance accrued interest at the simple rate of 12% per annum." In its answer, Dario Mortgages replied: "Admitted that pursuant to the terms of the Mortgage, the outstanding unpaid balance accrued interest at the rate of 12% per annum." We find that Dario Mortgages merely admitted that the interest rate was 12%; it did not admit that the interest rate was simple.

C.  COURSE OF DEALING

"Compound interest means interest on interest, in that accrued interest is added periodically to the principal, and interest is computed upon the new principal thus formed."  *Niggeling v Michigan Dep't of Transp*, 195 Mich App 163, 166; 488 NW2d 791 (1992).  "The difference between simple and compound interest is that simple interest does not merge with the principal and thus does not become part of the base on which future interest is calculated." *Id.*  It is well established that simple interest is the default in Michigan absent "a statute to the contrary, *an explicit agreement of the parties*, *or some special circumstance dictating otherwise . . . .*" *Norman*, 201 Mich App at 187 (emphasis added).  But "[t]his rule is subject to exceptions growing out of *peculiar relations between the parties* or the fraudulent conduct of the debtor, and courts of equity sometimes allow the compounding of interest, in order to accomplish a just and equitable settlement." *Id*. at 185 (quotation marks and citation omitted; emphasis added).  For example, "[s]uch a contract may be implied from the established *course of dealing* between the parties, or from the *general custom or usage of trade to charge interest on interest*, although the contrary view has been taken . . . ." *Id*. (quotation marks and citation omitted; emphasis added).

In this case, it is undisputed that the parties expressly agreed to a $500,000 loan with 12% annual interest, a minimum monthly principal and interest payment of $5,143.06 for 60 months, and a balloon payment due on November 29, 2012.  The payment ledger reflects that RJMC made monthly payments of $5,200 from December 2007 through October 2009.[2]  After the last payment was made, the ledger reflects that the balance was $494,424.50.  RJMC relied on the ledger in the trial court and on appeal.  In fact, it introduced the ledger into the record and used the $494,424.50 figure as the starting point for its calculations for the surplus proceeds that it was allegedly owed from the foreclosure sale.  As we previously recognized, "[i]f simple interest was truly the correct interest rate, then the . . . balance would not have been $494,524.50; the number would have been much lower  . . . ." *RJMC Corp*, unpub op at 6.  RJMC's reliance on this figure reflects that the parties implicitly agreed to compound interest through their established course of dealing.

Additionally, Dario Mortgages has continued to show on remand and on appeal that the monthly payments would be $5,143.06 for a $500,000 loan with a 60-month loan period at 12% annual interest compounded monthly and a balloon payment at the end.[3]  This is the exact monthly payment that is set forth in the mortgage note.  This evidence further demonstrates that the parties implicitly agreed to compound interest through their established course of dealing.[4]

---

[2]  The last payment made by RJMC was due on October 29, 2009, but the ledger reflects that the payment was not actually made until October 13, 2010.

[3]  This calculation is based on a 30-year amortization schedule.

[4]  RJMC presented no legal authority to support its contention that Dario Mortgages was required to show *multiple* prior mortgages between the parties that utilized compound interest in order to meet the *Norman* exception.  *Norman* gives no such suggestion.  RJMC seemingly recognizes this by relying on other authority.  The only decisions that RJMC draws upon are *CMC Telecom, Inc v Neyer Tiseo & Hindo, Ltd*, unpublished per curiam opinion of the Court of Appeals, issued

Furthermore, Dino Tomei affirmed in his affidavit that it was standard practice for lenders such as Dario Mortgages to charge interest compounded monthly for high-risk loans such as the one made to RJMC. As discussed in *Norman,* an agreement to pay compound interest may be implied "from the general custom or usage of trade[.]" *Norman*, 201 Mich App at 185 (quotation marks and citation omitted).

RJMC relies on Robert Cortis' affidavit to attempt to create a fact question that the parties intended a simple interest rate. In his affidavit, Cortis, in his role as the president and sole shareholder of RJMC, states that he never discussed or agreed to compound interest for the mortgage and that he did not see the ledger until after the property had been sold at the foreclosure auction. As a result, RJMC argues that the default of simple interest is implied. This argument, however, ignores the fact that the prior payments and the remaining balance (as reflected in the ledger) all show implicit acceptance of a compound interest rate.

It was RJMC's burden to set forth specific facts showing that a genuine issue of material fact exists in response to Dario Mortgages' motion for summary disposition pursuant to MCR 2.116(C)(10). *Jim's Body Shop Inc v Department of Treasury*, 328 Mich App 187, 206; 937 NW2d 123 (2019). We find that Cortis' self-serving affidavit was insufficient to create a material factual dispute. Because RJMC failed to present any evidence establishing the existence of a material factual dispute given the parties' undisputed course of conduct, the trial court properly granted Dario Mortgages' motion for summary disposition. And because there is no genuine issue of material fact that the parties implicitly agreed to compounding interest, the trial court did not err by denying RJMC's motion for summary disposition pursuant to MCR 2.116(C)(10).

Affirmed.

/s/ Sima G. Patel
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro

---

September 23, 2014 (Docket No. 315338), and *Ditzik v Schaffer Lumber Co*, 139 Mich App 81; 360 NW2d 876 (1984). Both of these decisions involved breach of contract claims governed by the Michigan Uniform Commercial Code. Neither of these decisions involve mortgages, interest rates, or the *Norman* exceptions. And *CMC Telecom* is not binding on this Court. See MCR 7.215(C)(1).